UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   ALEX LOBERA,                                                         No. 7-10-13203 SA

      Debtor.

GILA REGIONAL MEDICAL CENTER,

      Plaintiff,

v.                                                                            Adversary No. 11-1112 J

ALEX LOBERA,

      Defendant.

## MEMORANDUM OPINION

After unsuccessfully seeking to dismiss Alex Lobera's bankruptcy case pursuant to 11 U.S.C. § 707(a) based in part on Alex Lobera's alleged lack of good faith in seeking bankruptcy relief, Gila Regional Medical Center ("GRMC") filed this adversary proceeding seeking to deny Alex Lobera's discharge under 11 U.S.C. § 727(a)(2)(A), (a)(3), (a)(4), (a)(5), and (a)(7), and seeking a non-dischargeability determination under 11 U.S.C. § 523(a)(2)(A).[1] Most, if not all, of the factual grounds upon which GRMC bases its claims objecting to discharge in this adversary proceeding were also raised at the final evidentiary hearing on GRMC's motion to dismiss held in Alex Lobera's bankruptcy case. Judge Starzynski denied GRMC's motion to dismiss under § 707(a) in a lengthy memorandum opinion (the "707(a) Opinion"), concluding that there is no good faith requirement for filing a non-consumer chapter 7 bankruptcy case, and, even if there were, there was insufficient evidence to demonstrate that Alex Lobera (Lobera) filed his Chapter 7 bankruptcy petition in bad faith. *See In re Lobera,* 454 B.R. 824, 853 (Bankr.D.N.M. 2011).

---

[1] All statutory references in this Memorandum Opinion are to Title 11.

GRMC now seeks summary judgment on its § 727(a) claims, asserting that facts not subject to genuine dispute establish all required elements to Alex Lobera's discharge. *See* Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support ("Motion for Partial Summary Judgment") - Docket No. 37. In response, Lobera asserts that Judge Starzynski's 707(a) Opinion denying GRMC's motion to dismiss Lobera's chapter 7 bankruptcy case bars GRMC from litigating its claims objecting to discharge under the doctrines of collateral estoppel, res judicata, and law of the case. *See* Defendant Alex Lobera's Response and Memorandum in Support of Response to Plaintiff's Motion for Summary Judgment ("Response") – Docket No. 38. Alternatively, Lobera asserts that genuine issues of material fact preclude the entry of summary judgment in favor of GRMC. After considering the Motion for Partial Summary Judgment, Lobera's Response, and GRMC's reply,[2] the Court finds that genuine issues of material fact preclude the entry of summary judgment on GRMC's § 727(a) claims.

## DISCUSSION

*Summary Judgment Standards*

It is appropriate to grant a motion for summary judgment when the pleadings and other materials in the record, together with supporting affidavits, if any, demonstrate that there is no genuine dispute with respect to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56, made applicable to adversary proceedings by Fed.R.Bankr.P. 7056. The party requesting summary judgment "always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a

---

[2]*See* Plaintiff's Reply in Support of Motion for Partial Summary Judgment on Plaintiff's Complaint Objecting to Discharge under 11 U.S.C. § 727(a) ("Reply") – Docket No. 39.

2

genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When considering a motion for summary judgment, the Court views the record in the light most favorable to the party opposing summary judgment. *See, Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991)(the court "must view the record in a light most favorable to the parties opposing the motion for summary judgment.")(citation omitted)); *Harris v. Beneficial Oklahoma, Inc., (In re Harris),* 209 B.R. 990, 995 (10th Cir. BAP 1997)(same). Denial of summary judgment requires the existence of genuine factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue of fact exists if a rational fact finder, when viewing the record as a whole, could not find for the party opposing summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.")(internal quotation marks and citation omitted)). "[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993)(internal quotation marks and citation omitted)).

*Facts not Subject to Genuine Material Dispute*

GRMC identifies ninety-four numbered facts it asserts are not subject to genuine dispute. *See* Motion for Partial Summary Judgment, pp. 2 – 15. Lobera agrees that GRMC's facts 1 through 18 are not subject to genuine dispute, but disputes facts 19 through 94 based on the

3

707(a) Opinion. *See* Response, pp. 2 - 9.³ Lobera's Response includes a statement of facts not subject to genuine dispute; those facts are similarly based on the findings of fact Lobera asserts are embodied in the 707(a) Opinion. *See* Response, pp. 9 – 11. Specifically, Lobera relies on the following statements contained in the 707(a) Opinion:

1) The Court had no sense that the Debtor, or for that matter Ms. Quiroz [Lobera's live-in companion] had attempted to hide assets from the Court or creditors, or had attempted to hide transactions that would result in recoveries by a trustee. Both seemed completely honest. The Court also finds that Debtor appeared, and actually admitted, that the financial matters over the last year have caused him great stress and embarrassment, and this may have impeded his ability to be more effective in the preparation of his bankruptcy. It is also apparent that he relied on his counsel, perhaps more than he should have, but in a way which was not unreasonable under the circumstances. In sum, the Court found Debtor to be an honest debtor deserving bankruptcy relief. 707(a) Opinion, pp. 20 – 21.

2) The Court finds that there is not a good faith requirement for a non-consumer business debtor to file a Chapter 7 case. Even if there were such a requirement, GRMC and Barton [the other moving creditor] have failed to prove by a preponderance of the evidence that Debtor initiated this Chapter 7 case in bad faith. To the extent only an honest and deserving debtor is eligible to file a Chapter 7 petition, the Court finds that the Debtor is eligible. The facts elucidated and arguments made by GRMC and Barton are addressable by less drastic remedies than dismissal. For example, to the extent they established facts which could suggest that a trustee could recover preferences or fraudulent transfers, the case trustee is fully competent to investigate those transfers and recover them if proper. The Court therefore finds that the transactions alleged do not constitute cause. Finally, the Court finds Debtor's testimony regarding omitted items credible, and finds no evidence that Debtor attempted to hide assets or hinder their discovery. 707(a) Opinion, p. 60.

Essentially, Lobera contends that Judge Starzynski's findings made as part of the 707(a) Opinion negate the elements necessary to GRMC's claims objecting to discharge.

---

³For example, in response to GRMC's statement of undisputed fact No. 20, that "Debtor's SOFA, Line 1, listed no income from employment or operation of a business," Lobera states that, "[t]he Court considered Defendant Lobera's testimony that when the bankruptcy was filed, the tax returns for several years had not been done and that Defendant Lobera forgot to ask the attorney how to handle the unfiled tax returns. Defendant Lobera revised his tax returns and amended the SFA to include the prior year's income." Motion for Partial Summary Judgment, p. 5; Response, p. 2. The Response then cites to a page of the 707(a) Opinion. Response, p. 2.

4

*Preclusion Doctrines*

Lobera previously raised its collateral estoppel and res judicata arguments through a separate motion for summary judgment filed in this adversary proceeding.  *See* Defendant's Motion for Summary Judgment and Memorandum in Support Thereof on Objection to Discharge under 11 U.S.C. § 727(a) and on Jurisdiction of this Court to enter a Monetary Judgment following Stern v. Marshall ("Lobera's Motion for Summary Judgment") – Docket No. 8.  In Lobera's Motion for Summary Judgment, Lobera asserted that the 707(a) Opinion precludes GRMC from subsequently asserting claims against him objecting to discharge.  Judge Starzynski denied Lobera's Motion for Summary Judgment, finding that neither res judicata nor collateral estoppel bar GRMC from asserting claims objecting to discharge under 11 U.S.C. § 727.  *See* Memorandum Opinion on Defendant/Debtor's Motion for Summary Judgment on Objection to Discharge Under 11 U.S.C. § 727(a) and on Jurisdiction to Enter a Money Judgment on § 523 Claim ("Memorandum Opinion on Lobera's Preclusion Arguments") – Docket No. 17.  GRMC asserts that neither collateral estoppel nor res judicata doctrines bar its claims objecting to discharge, and that the law of the case doctrine should be applied to the Memorandum Opinion on Lobera's Preclusion Arguments to prevent Lobera from again asserting collateral estoppel and res judicata arguments in defense of GRMC's Motion for Partial Summary Judgment.

Because the 707(a) Opinion and the Memorandum Opinion on Lobera's Preclusion Arguments were both issued by a federal bankruptcy court, federal preclusion doctrines apply. *See Murdock v. Ute Indian Tribe of Uintah and Ouray Reservation,* 975 F.2d 683, 686-687 (10th Cir. 1992)(federal collateral estoppel and res judicata doctrines are applied to judgments by a federal court)(citations omitted).  The doctrine of collateral estoppel, also known as issue

5

preclusion,[4] is based on "the principle that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *United States v. Gallardo-Mendez,* 150 F.3d 1240, 1242 (10th Cir. 1998)(quoting *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)).

In ruling on the same collateral estoppel argument Lobera now makes, Judge Starzynski stated:

> In fact, the Memorandum left open the issue of whether further actions might be pursued if the Chapter 7 case continued. The Court did state that, based on the evidence presented, it found no evidence that the Debtor attempted to hide assets or hinder their discovery. However, the focus of the motion was "cause" for dismissal including an argument that a large disposable income was sufficient bad faith to constitute "cause." There was no necessity for Gila to introduce all evidence of attempts to hide assets or hinder their discovery because that was not the focus of the motion. Similarly, there was no need for Gila to introduce evidence of the other elements of section 727. In summary, the Court finds that the issue previously decided is not identical with the one presented in the action currently before the Court. Therefore, collateral estoppel does not apply.

Memorandum Opinion on Lobera's Preclusion Arguments, pp. 10-11.

Issue preclusion is an equitable doctrine to be applied in the court's sound discretion. *See, Arapahoe County Public Airport Authority v. F.A.A.*, 242 F.3d 1213, 1220 (10th Cir.2001)(observing that the application of issue preclusion is based on the court's equitable powers)(citing *Acacia Village v. United States,* 24. Cl.Ct. 445, 448 (1991)(remaining citations omitted)). The Court will not depart from Judge Starzynski's determination not to give collateral estoppel effect to the 707(a) Opinion in this adversary proceeding.

Under the res judicata doctrine, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Sil-Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1520 (10th Cir. 1990)(quoting *Allen v.*

---

[4]*See Murdock,* 975 F.2d at 686 n.4 ("The terms 'collateral estoppel' and 'issue preclusion' are used interchangeably.")(citing *Allen v. McCurry,* 449 U.S. 90, 94 n.5, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)(remaining citations omitted)).

6

*McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). "Res judicata generally applies where there is an identity of parties and of claims and a final judgment on the merits." *Id.* (citation omitted). Judge Starzynski found that the 707(a) Opinion does not have res judicata effect in this adversary proceeding because the claims are different. Memorandum Opinion on Lobera's Preclusion Arguments, p.13. This Court agrees. Here, the Plaintiff seeks denial of Lobera's discharge under various subsections of § 727(a). In the contested matter in Lobera's Chapter 7 case which the 707(a) Opinion was entered, the Plaintiff sought dismissal of the Chapter 7 case for cause under § 707(a). These are different claims. Further, the Plaintiff could not have asserted its objections to discharge in the contested matter, because an objection to discharge must be brought in an adversary proceeding. Fed.R.Bankr.P. 7001(4).

Finally, the law of the case doctrine "'is a judicial doctrine designed to promote decisional finality. Once a court decides an issue, the doctrine comes into play to prevent the re-litigation of that issue in subsequent proceedings in the same case.'" *In re Meridian Reserve, Inc.,* 87 F.3d 406, 409 (10th Cir. 1996)(quoting *Pittsburg & Midway Coal Mining Co. v. Watchman,* 52 F.3d 1531, 1536 n.4 (10th Cir. 1995)). It is a "discretionary rule of practice in the courts." *In re Buckner,* 218 B.R. 137, 141 (10th Cir. BAP 1998)(citing *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)(remaining citation omitted)). The Court, in its discretion, likewise declines to apply the law of the case doctrine for purposes of adjudicating the pending Partial Motion for Summary Judgment.[5]

---

[5]The Court notes that Starzynski's Memorandum Opinion on Lobera's Preclusion Arguments does not appear to be a final order inasmuch as its effect is to allow GRMC to pursue its claims objecting to discharge. Consequently, the Memorandum Opinion on Lobera's Preclusion Arguments failed to dispose of this adversary proceeding. *See In re American Ready Mix, Inc.,* 14 F.3d 1497, 1499 n. 2 (10th Cir. 1994)(explaining that "[i]n bankruptcy proceedings, an order is final . . . when it disposes of a 'particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition.'")(quoting *Cascade Energy & Metals Corp. v. Banks (In re Cascade Energy & Metals Corp.),* 956 F.2d 935, 938-39 (10th Cir. 1992)(additional internal quotation marks and citations omitted)). Because the Memorandum Opinion on Lobera's Preclusion Arguments is not a final order, the law of the case doctrine is technically inapplicable. *See Estate of Jacoby v. Akbari-Shahmirzadi (In re Akbari-Shahmirzadi),* 2013

7

*The § 727 Claims*

GRMC asserts that Lobera's discharge should be denied under the following subsections of § 727: (a)(2)(A)[6] (transfer of property with intent to hinder, delay, or defraud a creditor); (a)(3)[7] (failure to preserve records from which the debtor's financial condition and business transactions might be ascertained); (a)(4)[8] (false oaths); (a)(5)[9] (failure to explain loss of assets); and (a)(7)[10] (wrongful act prohibited under § 727(a)(2) through (6) committed in connection with another bankruptcy case in which the debtor is an insider). GRMC's claims arise primarily from Lobera's sale of assets of his corporation, Lobera Imaging, P.C. ("Imaging"), for $400,000, and

---

WL 1099794, at *3 (Bankr.D.N.M. Mar. 15, 2013)(J. Thuma)(observing that "'interlocutory orders are not subject to the law of the case doctrine'")(quoting *Filebark v. United States Dept. of Transportation,* 555 F.3d 1009, 1013 (D.C. Cir. 2003)(internal quotation marks and additional citation omitted)).

[6] Subsection (a)(2)(A) provides:
    The court shall grant the debtor a discharge, unless—
        (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—
            (A) property of the debtor, within one year before the date of the filing of the petition[.]
    11 U.S.C. § 727(a)(2)(A).

[7] Subsection (a)(3) provides:
    The court shall grant the debtor a discharge, unless—
        (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]
    11 U.S.C. § 727(a)(3).

[8] Subsection (a)(4)(A) provides:
    The court shall grant the debtor a discharge, unless—
        (4) the debtor knowingly and fraudulently, in or in connection with the case—
            (A) made a false oath or account[.]
    11 U.S.C. § 727(a)(4)(A).

[9] Subsection (a)(5) provides:
    The court shall grant the debtor a discharge, unless—
        (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]
    11 U.S.C. § 727(a)(5).

[10] Subsection (a)(7) provides:
    The court shall grant the debtor a discharge, unless—
        (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act concerning an insider[.]
    11 U.S.C. § 727(a)(7).

the subsequent disposition of those funds. The Court will evaluate each of these claims in light of the required elements.

### *§ 727(a)(2)(A) and §727(a)(4)*

Both § 727(a)(2)(A) and (a)(4) contain a wrongful intent requirement. *See Marine Midland Bus. Loans, Inc. v. Carey (In re Carey),* 938 F.2d 1073, 1077 (10th Cir. 1991)(actual intent to defraud is required to deny a discharge under § 727(a)(2)(A)(citation omitted)); *Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1294 (10th Cir. 1997)(under § 727(a)(4) the debtor must "knowingly and fraudulently" make a false oath that relates to a material fact)(citation omitted)).[11] For this reason, objections to discharge under § 727(a)(2)(A) based on a debtor's fraudulent transfer of property, or under § 727(a)(4) based on a debtor's false oath, are often not susceptible to summary judgment. *See Kontrick,* 295 F.3d at 737 (acknowledging that "[i]ntent is normally a question of fact and often not susceptible to summary judgment."); *Compton v. Herrman (In re Herrman),* 355 B.R. 287, 291 (Bankr.D.Kan. 2006)("As a general rule, questions involving a person's intent or other state of mind cannot be resolved by summary judgment.")(citation omitted)); *Waldrip v. Hart (In re Hart),* 271 B.R. 213, at *5 (10th Cir. BAP Sept. 19, 2001)(unpublished)(noting that "'summary judgment is generally inappropriate where questions of intent and state of mind are implicated.'")(quoting *Gelb v. Bd. of Elections,* 224 F.3d 149, 157 (2nd Cir. 2000)(remaining citations omitted)). However, fraudulent intent is often proved up based on the attendant facts and circumstances rather than on the debtor's direct testimony,[12] and the circumstantial evidence of a debtor's fraudulent intent may be so conclusive

---

[11] *See also, In re Kontrick,* 295 F.3d 724, 736 (7th Cir. 2002)(Section 727(a)(2)(A) has an improper intent component)(citation omitted)).

[12] *See Ng v. Adler (In re Adler)*, 494 B.R. 43, 65 (Bankr. E.D.N.Y. 2013)("Courts will find the requisite intent 'to hinder, delay, or defraud' a creditor [under Section 727(a)(2)(A)] from either: (1) direct or explicit proof, a rarity, or (2) a preponderance of circumstantial evidence of a debtor's illicit intent, the so-called 'badges of fraud'")(citations omitted)); *Holber v. Jacobs (In re Jacobs),* 381 B.R. 147, 164 (Bankr.E.D.Pa. 2008)(noting that "[f]raudulent intent

9

that summary judgment on a claim objecting to discharge under § 727(a)(2)(A) or (a)(4) is nevertheless appropriate. *See Marrama v. Citizens Bank of Mass. (In re Marrama),* 445 F.3d 518, 522 (1st Cir. 2006)(stating that summary judgment on an objection to discharge under § 727(a)(2)(A) is warranted when the "[e]vidence of fraud . . . yields no plausible conclusion but that the debtor's intent was fraudulent." )(citation omitted)). *See also, First Nat'l Bank, Larned v. Davison (In re Davison),* 2004 WL 2852352, *4 (10th Cir. BAP June 29, 2004)(unpublished)(affirming bankruptcy court's grant of summary judgment on § 727(a)(4) claim where debtors offered no evidence that would refute the plaintiff's circumstantial evidence supporting an inference of wrongful intent).

To sustain an objection to discharge under § 727(a)(2)(A), the objecting creditor must establish the following elements by preponderance of the evidence that the debtor: 1) transferred property; 2) in which the debtor has an interest; 3) within one year of the petition date; 4) with the intent to hinder, delay, or defraud a creditor.[13] An objection to discharge under § 727(a)(4) requires the creditor to prove: (1) that the debtor made a statement under oath; (2) that the statement was false; (3) that the debtor knew the statement was false when he made it; (4) that the debtor fraudulently intended to make the statement; and (5) that the statement materially related to the debtor's bankruptcy case. *McVay v. Perez (In re Perez),* 411 B.R. 386, 401 (D.Colo. 2009)(citing *Garrett v. Vaughan (In re Vaughan),* 233 Fed.Appx. 783, 785 (10th Cir.

---

may be inferred from circumstantial evidence of a course of conduct . . . because courts recognize that it is unlikely that a debtor will . . . admit to being motiv[ated] by fraud.")(citation omitted)).

[13]*See Brown,* 108 F.3d at 1293 (denial of discharge under § 727(a)(2)(A) requires the creditor to establish the following four elements: "(1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor."). *See also, In re Dennis,* 330 F.3d 696, 701 (5th Cir. 2003)(listing the four elements under §727(a)(2)(A)); *In re Keeney,* 227 F.3d 679, 683 (6th Cir. 2000)(compressing the four elements into two: "1) a disposition of property . . . , and 2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property.'")(quoting *Hughes v. Lawson (In re Lawson),* 122 F.3d 1237, 1240 (9th Cir. 1997)); *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir. 1993)(the exception to discharge under § 727(a)(2)(A) "consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor).").

10

2007)). "Omissions as well as affirmative statements made in a debtor's Statement of Financial Affairs and Schedules constitute statements under oath and can constitute a false oath for purposes of Section 727(a)(4)(A)." *Estate of Bishop v. Mulholland (In re Mulholland),* 2011 WL 4352293, at *4 (Bankr.D.N.M. Sept. 16, 2011)(citations omitted)).[14]

In support of GRMC's § 727(a)(2)(A) claim, GRMC asserts that the facts not subject to genuine dispute establish that Lobera transferred assets valued at several hundred thousand dollars during the twelve month period before the filing of his bankruptcy petition, including transfers to his live-in companion, Ms. Quiroz, transfers to her adult children and to Lobera's adult children, and converted non-exempt assets into exempt assets by expending $125,000 on home improvements.[15] With respect to its § 727(a)(4) claim, GRMC identifies certain omissions and errors contained in the Statement of Financial Affairs ("SOFA") and Schedules filed in Lobera's bankruptcy case. In response, Lobera points out that evidence of the various transfers and of the omissions and errors in the SOFA and Schedules was presented at the final, evidentiary hearing on GRMC's Motion to Dismiss, and that Judge Starzynski considered most, if not all, of these facts in connection with the 707(a) Opinion. In the 707(a) Opinion Judge Starzynski found that Lobera "seemed completely honest;" had not "attempted to hide assets from the Court or creditors;" and relied upon counsel when preparing his petition, SOFA, and

---

[14]*See also, In re Phillips,* 2010 WL 6259975, at *6 (9th Cir. BAP Apr. 6, 2010), *aff'd,* 460 Fed.Appx.625 (9th Cir. 2011)("A false statement or omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath.")(citing *Roberts v. Erhard (In re Roberts),* 331 B.R. 876, 882 (9th Cir. BAP 2005)); *Baccala Realty, Inc. v. Fink (In re Fink),* 351 B.R. 511, 525 (Bankr.N.D.Ill. 2006)(acknowledging that "[a] debtor's petition, schedules, and statement of financial affairs all constitute statements under oath for purposes of § 727(a)(4)" and that material omissions from a debtor's schedules made with intent to mislead creditors and the trustee regarding the debtor's true financial condition constitutes a false oath under § 727(a)(4))(citing *Britton Motor Serv., Inc. v. Krich (In re Krich),* 97 B.R 919, 923 (Bankr.N.D.Ill, 1988)).

[15]A debtor's conversion of non-exempt assets into exempt assets during the year before the filing of the petition alone is often insufficient to deny a debtor's discharge. *See Carey*, 938 F.2d at 1077("'[T]he desire to convert assets into exempt forms by itself' does not constitute actual intent to defraud" for purposes of 11 U.S.C. § 727(a)(2))(quoting *In re Johnson,* 880 F.2d 78, 81 (8th Cir. 1989)).

Schedules "in a way which was not unreasonable under the circumstances." *See* 707(a) Opinion, pp. 20 and 21.

These findings are sufficient to raise genuine issues of material fact with respect to GRMC's claims under § 727(a)(2)(A) and (a)(4), even though the findings do not have collateral estoppel effect, because they appear to negate the wrongful intent requirements under these sections. Questions of intent generally require the Court to weigh a debtor's credibility. *See Chevy Chase Bank FSB v. Kukuk (In re Kukuk),* 225 B.R. 778, 786 (10th Cir. BAP 1998)(stating in connection with a non-dischargeability claim under § 523(a)(2)(A) that "[a] finding regarding fraudulent intent . . . will be determined on a case-by-case basis, with the particular circumstances of the case and the demeanor and credibility of the witness playing a very large role.")[16] And here, any determination with respect to Lobera's credibility contained in the 707(a) Opinion was made by a different judge in a decision without collateral estoppel effect. Under these circumstances, the Court will not grant summary judgment on GRMC's objections to discharge under § 727(a)(2)(A) and (a)(4) which both require the Court to find that Lobera acted with wrongful intent.

### *§ 727(a)(3) and § 727(a)(5)*

Unlike § 727(a)(2)(A) and (a)(4), neither § 727(a)(3) nor § 727(a)(5) includes a wrongful intent component. *See In re Juzwiak,* 89 F.3d 424, 430 (7th Cir. 1996)("creditors do not need to prove that the debtor intended to defraud them in order to demonstrate a § 727(a)(3) violation.")(citations omitted)); *Prairie Production Credit Association v. Suttles (In re Suttles),*

---

[16]*See also, Davis v. Weddington (In re Weddington),* 457 B.R. 102, 112 (Bankr.D.Kan. 2011)(false oath claim under § 727(a)(4) "rests largely on the circumstances of the case and an assessment of the credibility and demeanor of the debtor.")(citations omitted)); *Lafarge North America, Inc. v. Poffenberger (In re Poffenberger),* 471 B.R. 807, 816 (Bankr.D.Md. 2012)(the determination of fraudulent intent under § 727(a)(2)(A) "'often will depend upon a bankruptcy court's assessment of the debtor's credibility . . .'")(quoting *Matter of Krehl,* 86 F.3d 737, 743-44 (7th Cir. 1996)).

12

819 F.2d 764, 766 (7th Cir. 1987)("Section 727(a)(5) does not require fraudulent intent . . .")(citation omitted)).[17] Under § 727(a)(3), the party seeking a denial of discharge must prove that the debtor "failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain his financial condition and *material business* transactions." *Brown,* 108 F.3d at 1295 (citing *In re Folger,* 149 B.R. 183, 188 (D.Kan. 1992)(emphasis added in *Brown*)). Once the creditor makes this initial showing, the burden then shifts to the debtor to justify the failure to maintain records. *Id.*

Section 727(a)(5), which forfeits a debtor's discharge based on the debtor's failure to satisfactorily explain a loss or deficiency of assets, also has a shifting burden. *See The Cadle Co. v. Stewart (In re Stewart),* 263 B.R. 608, 618 (10th Cir. BAP 2001), *aff'd,* 35 Fed.Appx. 811 (10th Cir. 2002)("once the objecting party meets its initial burden of proof, the burden then shifts to the debtor to explain the loss or deficiency of assets in a satisfactory manner.")(citation omitted)); *McDermott v. Swanson (In re Swanson),* 476 B.R. 236, 241 (8th Cir. BAP 2012)("Similar in operation to § 727(a)(3), a debtor's burden (of production) to explain the loss of assets is not triggered until the plaintiff establishes that an actual loss of assets has occurred.")(citation omitted)). Under this section, the creditor must first demonstrate that the debtor owned assets at one time, but no longer owned them as of the petition date. *Stewart,* 263 B.R. at 618 ("A party objecting to a debtor's discharge under § 727(a)(5) has the burden of proving facts establishing that a loss or shrinkage of assets actually occurred."). Only then must the debtor come forward to explain what happened to the assets. *D.A.N. Joint Venture v.*

---

[17] *See also, Cobra Well Testers, LLC v. Carlson (In re Carlson),* 2008 WL 8677441, at *5 (10th Cir. Jan. 23, 2008)(unpublished)("'no requirement exists that debtors act fraudulently or intentionally to sustain an objection to discharge based on Section 727(a)(5).'")(quoting *Shappell's Inc. v. Perry (In re Perry),* 252 B.R. 541, 549 (Bankr.M.D.Fla. 2000)); *Quicken Loans, Inc. v. Splawn (In re Splawn),* 376 B.R. 747, 758 (Bankr.D.N.M. 2007)(noting that 727(a)(3) contains no intent to defraud requirement); *McVay v. Phouminh (In re Phouminh),* 339 B.R. 231, 247 (Bankr.D.Colo. 2005)(observing that, under § 727(a)(5) and § 727(a)(3), "it is unnecessary for the party objecting to discharge to prove or even allege fraudulent acts or a corrupt motive on the apart of the debtor.").

13

*Cacioli (In re Cacioli),* 463 F.3d 229, 238 (2nd Cir. 2006)("If the creditor makes such a showing [of loss or deficiency of assets], the debtor has an opportunity to explain the whereabouts of the assets.")(citation omitted)); *Swanson,* 476 B.R. at 241 (debtor's burden is "triggered" upon the creditor's demonstration that there has been a loss of assets). The propriety of the loss of assets is not relevant. *See Kim v. Keeran (In re Keeran),* 2012 WL 1196531, at *10 (Bankr.D.N.M. Apr. 6, 2012)(under Section 727(a)(5) "the issue is whether the explanation satisfactorily describes what happened to assets; not whether what happened to assets was proper")(quoting *Carlson,* 2008 WL 8677441 at *5)(internal quotation marks and citations omitted)).

When explaining a loss of assets, a debtor generally must present some form of corroborating evidence. *See Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir. 1984)("Vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory [for purposes of § 727(a)(5).")(citation omitted)); *PNC Bank, N.A. v. Buzzelli (In re Buzzelli),* 246 B.R. 75, 117 (Bankr.W.D.Pa. 2000)(holding "that a debtor's testimonial explanation, by itself, potentially may suffice to satisfy the debtor's burden under § 727(a)(5) if it is convincing to the Court; however, if said testimonial explanation is, by itself, not convincing to the Court, then the debtor, . . . must come forward with sufficient corroboration in the form of documentation or independent testimony that will convince the Court."); *Damon v. Chadwick (In re Chadwick),* 335 B.R. 694, 703 (W.D.Wis. 2005)("Section 727(a)(5) requires a satisfactory explanation which must consist of more than vague, indefinite and uncorroborated assertions by the debtor.")(citations omitted)). *See also, Cacioli,* 463 F.3d at 238 (observing that "[a]s long as the debtor's explanation is convincing and not rebutted, there is no deed for documentary corroboration.")(citation omitted)).

14

Case 11-01112-j    Doc 42    Filed 02/18/14    Entered 02/18/14 17:17:32 Page 14 of 20

GRMC's objection to discharge under § 727(a)(3) is based on Lobera's transfer of proceeds from the sale of Imaging to Ms. Quiroz that were allegedly used for household expenses. GRMC asserts that there are insufficient records to document the use of these funds. GRMC also complains that Ms. Quiroz wrote checks to cash, gave the cash to her son to buy groceries, and then kept the balance, but that there are no records to document how the cash was spent. Use of cash to pay for expenses without any documentation to establish what the cash was used for can serve as grounds to deny a debtor's discharge. *See, e.g., Meridian Bank v. Alten,* 958 F.2d 1226, 1234 (3rd Cir. 1992)(discharged denied under § 727(a)(3) where debtors transacted their business transactions solely in cash so they could avoid creditors seizing their assets); *Doubet, LLC v. Palermo (In re Palermo),* 370 B.R. 599, 618 (Bankr.S.D.N.Y. 2007)(discharge denied under § 727(a)(3) where the debtors books and records reflected "$445,000 in uncategorized deposits and $522,000 in uncategorized withdrawals."); *Wachovia Bank, N.A. v. Spitko (In re Spitko),* 357 B.R. 272, 311-12 (Bankr.E.D.Pa. 2006)(discharge denied under § 727(a)(3) based on the debtors' failure to maintain records relating to their several cash transactions, including payment of household expenses)). On the other hand, "[o]bviously an unsophisticated wage earner dealing primarily in cash should not be denied a discharge because he failed to keep books of his account." *Goff v. Russell Co. (In re Goff),* 495 F.2d 199, 201-02 (5th Cir. 1974).

It is not possible based on the facts not subject to genuine dispute for this Court to determine the amount in excess of $15,000 of the $400,000 in question spent as cash. *See* Partial Motion for Summary Judgment, ¶ 61 ("Between April 1, 2010 and June 28, 2010, Ms. Quiroz wrote a number of checks to her adult son for 'cash,' which totaled in excess of $15,000."). The 707(a) Opinion notes that Ms. Quiroz "keeps all of her receipts." 707(a) Opinion, p. 19. This is

15

sufficient to raise a genuine issue of material fact with respect to whether Lobera has maintained adequate records to document Lobera's use of cash.

Nor do the facts not subject to genuine dispute sufficiently establish that there are insufficient records with respect to the disposition of the $400,000 in sales proceeds not spent as cash. Indeed, the statement of facts not subject to genuine dispute includes facts which set forth in great detail the transfers Lobera and Ms. Quiroz made from the sales proceeds, which suggests that GRMC was able to discern Lobera's transactions.[18] Thus, it appears that § 727(a)(3)'s purpose of enabling creditors to trace a debtor's financial history to understand the debtor's financial condition and reconstruct his financial transactions has not been thwarted, at least as to the non-cash expenditures. *See Structured Asset Serv., LLC v. Self (In re Self),* 325 B.R.224, 240 (Bankr.N.D.Ill. 2005)(explaining that § 727(a)(3) "'ensures that trustees and creditors will receive sufficient information to enable them to trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions.'" (quoting *Juzwiak,* 89 F.3d at 427-28)(additional internal quotation marks and citation omitted)).

Even if the Court were to accept that GRMC has established a failure to maintain adequate records, sufficient questions of fact regarding a justification for the amount and type of records Lobera maintained preclude summary judgment. The "inquiry under § 727(a)(3) is fact specific, [and] there is no uniform manner in which records must be maintained." *Spitko,* 357 B.R. at 305-06 (citing *Juzwiak,* 89 F.3d at 428). A debtor's justification for a lack of records depends upon the debtor's level of sophistication, business experience, educational background, and structure of his personal finances, as well as "any other special circumstances that may exist." *See Comerica Bank v. Rajabali (In re Rajabali),* 365 B.R. 702, 713 (Bankr.S.D.Tex. 2007)(factors relevant to a determination under § 727(a)(5) include "(1) a debtor's education; (2)

---

[18] Of course, GRMC also gathered information about the transfers from the testimony of Lobera and Ms. Quiroz.

16

a debtor's sophistication and business experience; and (3) any special circumstances that may exist.")(citations omitted)); *Self,* 325 B.R. at 241(in assessing "[t]he completeness and accuracy of a debtor's records . . . . Courts should consider . . . [the debtor's] personal financial structure.")(citations omitted)). Whether a debtor's deficiency in recordkeeping is justified "'depends largely on what a normal, reasonable person would do under similar circumstances.'" *Spiridigliozzi v. Grammenos (In re Grammenos),* 469 B.R. 535, 549 (Bankr.D.N.J. 2012)(quoting *Meridian Bank,* 958 B.2d at 1231)(additional citation omitted)). The record now before the Court with respect to the way in which Lobera and Ms. Quiroz handled their personal finances and whether any deficiency in records would be justified under their particular circumstances is insufficient for purposes of granting summary judgment. *Cf. Grammenos,* 469 B.R. at 549 (denying summary judgment on creditors §727(a)(3) claim where there was insufficient evidence in the record to assess what level of record-keeping would be reasonable based on the particular characteristics of the debtor, including the debtor's sophistication, education, or type of business). The Court will, therefore, deny GRMC's request for summary judgment on its objection to discharge under § 727(a)(3).

Similarly, GRMC bases its § 727(a)(5) claim on Lobera's alleged failure to account for the $400,000 in sales proceeds. But the 707(a) Opinion indicates that Lobera offered an exhibit detailing expenditures of funds in excess of $407,000. *See* 707(a) Opinion, p. 19 ("Ms. Quiroz had prepared a schedule that listed all disbursements from the $400,000. It was admitted as Exhibit A. The schedule totaled $407,000."). This is sufficient to raise a genuine issue of material fact with respect to GRMC's objection to discharge under § 727(a)(5). Finally, GRMC asserts that Lobera's discharge should be denied under § 727(a)(5) based on a transfer of real property to Lobera's father, and Lobera's alleged failure to provide a clear and consistent

17

explanation for that transfer. But because the propriety of a loss of assets is not relevant to a claim under § 727(a)(5), it is not appropriate to grant summary judgment on GRMC's objection to discharge under § 727(a)(5) based solely on the unclear circumstances surrounding Lobera's alleged transfer of real property to his father. "[W]hether a debtor satisfactory explains a loss of assets is a question of fact" which requires the court to "asses the credibility of witnesses . . . and [evaluate] the evidentiary content of their testimony." *Chalik,* 748 F.2d at 619 (citation omitted). The Court will, therefore, deny summary judgment as to GRMC's claims under § 727(a)(3) and (a)(5).

### *§ 727(a)(7)*

Finally, GRMC requests summary judgment on its claim objecting to discharge under § 727(a)(7), which provides that an individual debtor is not entitled to a discharge in his own case if, within one year of the petition date or during his own case, he commits any wrongful act proscribed by paragraphs (2), (3), (4), (5), or (6) of § 727(a) in connection with another bankruptcy case in which the individual debtor is an insider. 11 U.S.C. § 727(a)(7); *Sloan v. Tirey (In re Tirey),* 271 B.R. 213, at *3 (10th Cir. BAP Aug. 24, 2001)(Table)(explaining that "§ 727(a)(7) . . . makes a violation of § 727(a)(4) [or (a)(2), (a)(3), (a)(5) or (a)(6)] that the debtor committed in connection with an insider's case a basis for denying the debtor's discharge in his own case."). GRMC's objection to discharge under § 727(a)(7) stems from actions GRMC alleges Lobera, who is the 100% shareholder and owner of Imaging, took in connection with Imaging's bankruptcy case that GRMC asserts violate § 727(a)(2)(A).

Lobera does not dispute that he was the 100% shareholder and owner of Imaging. Motion for Partial Summary Judgment, ¶ 2; Response, p.9, ¶ 1. Nor does Lobera dispute that Imaging filed its own petition for bankruptcy as Case No. 10-12751 on May 28, 2010. *See* Motion for Partial Summary Judgment, ¶ 9; Response, p.9, ¶ 1. GRMC asserts that:

18

> [e]ffective as of April 1, 2010, Debtor and Lobera Imaging sold and transferred to Virtual Radiologic Corporation ("V-Rad") Debtor's and Lobera Imaging's business goodwill and professional services agreement between Debtor and Memorial Medical Center (the "Assets") in exchange for $400,000 paid by V-Rad ("Sale Proceeds").
>
> *See* Partial Motion for Summary Judgment, ¶ 35.

GRMC asserts that Imaging transferred property to Lobera for no consideration, and that Lobera then used the proceeds from the sale of Imaging for his own personal use instead of paying Imaging's creditors. As 100% shareholder and owner of Imaging, Lobera is an insider of Imaging for purposes of § 727(a)(7). *See* 11 U.S.C. § 101(31)(B)(defining "insider" of a debtor corporation as the "person in control of the debtor"). Thus, if Lobera transferred assets of Imaging with an intent to hinder, delay, or defraud creditors of Imaging within one year of the date Imaging filed its bankruptcy petition (satisfying the requirements under § 727(a)(2)(A)), § 727(a)(7) would preclude Lobera from receiving a discharge in his own bankruptcy case. *Cf. Watman v. Groman (In re Watman),* 458 F.3d 26 (1st Cir. 2006)(discharge denied under § 727(a)(7) based on debtor's fraudulent transfer of assets of dental practice in which he was an insider and which filed its own chapter 11 bankruptcy to a new entity that he controlled); *Redmond v. Karr (In re Karr),* 442 B.R. 785, 798 (Bankr.D.Kan. 2011)(finding that insider/debtor of corporation who caused the corporation to transfer corporate assets to insider/debtor to pay for his own personal expenses within one year of the corporation's bankruptcy filing, and who made such transfers with intent to hinder, delay, or defraud the corporations' creditors, was not entitled to receive a discharge under § 727(a)(7)).

But here, GRMC's undisputed fact indicates that Lobera and Imaging sold both Lobera's assets *and* Imaging's assets. The Court cannot discern on summary judgment what portion of the assets is attributable to Lobera, and which portion is attributable to Imaging. Lobera's disposition of the sales proceeds attributable to Lobera's individual assets gives rise to the same

19

exact claim under § 727(a)(2)(A) addressed above. The wrongdoing upon which GRMC predicates its objection to discharge under § 727(a)(7) arising from Lobera's disposition of Imaging's assets still requires GRMC to demonstrate that Lobera acted with fraudulent intent. The Court, therefore, declines to grant summary judgment on GRMC's claim under § 727(a)(7), without an opportunity to weigh Lobera's credibility and demeanor.

"'[T]he law favors the resolution of legal claims on the merits.'" *Walker v. United Parcel Service, Inc.,* 240 F.3d 1268, 1272 (10th Cir. 2001)(quoting *Gocolay v. New Mexico Fed. Sav. & Loan Ass'n,* 968 F.2d 1017, 1021 (10th Cir. 1992)). Where the Court has not had an opportunity to observe Lobera's demeanor and credibility, it is particularly appropriate to deny summary judgment so that such an assessment can be made. It appears that many of Lobera's actions of which GRMC complains are not contested with respect to what happened, but are contested with respect to the significance of those actions. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: February 18, 2014

COPY TO:

**CaraLyn Banks**
KEMP SMITH LLP
Attorney for Plaintiff
880 S. Telshor Blvd. , Suite 220
Las Cruces, NM 88011

**Thomas D Walker**
Walker & Associates, P.C.
Attorney for Plaintiff
500 Marquette Ave NW Suite 650
Albuquerque, NM 87102-5309

**Dean B. Cross**
**Christopher M. Gatton**
Law Office of George "Dave" Giddens, P.C.
10400 Academy NE, Suite 350
Albuquerque, NM 87111